681 P.2d 463

**Paul D. HURLEY, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Jerry's Trenching Service, Inc., Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

No. 1 CA–IC 2874.

Court of Appeals of Arizona, Division 1, Department C.

Oct. 6, 1983.

Reconsideration Denied Nov. 21, 1983.

Review Granted Feb. 15, 1984.

Rabinovitz, Dix & Rehling, P.C. by J. Stephen Dix and Charles Rehling, Tucson, for petitioner.

James A. Overholt, Chief Counsel, The Industrial Com'n of Arizona, Phoenix, for respondent.

Robert K. Park, Chief Counsel, Phoenix by Fred R. Sands, Tucson, for respondent Ins. Carrier.

OPINION

CONTRERAS, Presiding Judge.

This is a special action review of an April 16, 1982, Industrial Commission award suspending and reinstating benefits. The sole issue concerns the effective date of the reinstatement: should it be when the written request for approval to leave Arizona was filed, when the Industrial Commission first acted on the request, or when the Industrial Commission by its April 16, 1982, award actually granted claimant permission to leave the state. The administrative law judge concluded that the effective date was when permission was actually granted. We agree and affirm the award.

In June 1980, the petitioner (claimant) had a compensable back injury. He was receiving active medical treatment and compensation when, on September 29, 1981, his attorney in a letter to the Industrial Commission requested permission for claimant to leave Arizona. This letter did not state any reason why claimant was

requesting permission to leave the state although it did state that claimant "has received medical permission from his treating physician to leave the state ...." Approximately two weeks later, and without written approval from the Industrial Commission, the claimant left Arizona and went to Colorado. On November 2, 1981, the respondent carrier issued a notice of suspension of benefits effective October 3, 1981 because claimant had left the state without the written approval of the Industrial Commission. On November 30, 1981, the Industrial Commission denied the request to leave Arizona based upon its finding that "said applicant's attending physician has indicated that the applicant's condition contraindicates applicant leaving the area in which treatment is being rendered." The claimant timely protested both the suspension and this denial. A hearing was held in which evidence was presented from which the administrative law judge found that "applicant's treating Arizona physician did not feel that it was contraindicated for the applicant to move to Colorado ..." and that he "left the State of Arizona for compelling financial reasons ..." and that "[b]ecause of compelling financial reasons, the applicant should be and is by this decision granted permission to reside in Colorado." It is clear from the record that claimant did not have Commission approval to leave this state until the administrative law judge issued the award on April 16, 1982.

In essence and by way of summarization, the award granted claimant permission to reside in Colorado and reinstated benefits from the date of the award. In this regard, the dispositive finding states in relevant part:

> 5. ... Arizona case law has stressed the plain meaning of *A.R.S.* § 23–1071 and has declined to create exceptions to this rule. *Waxler v. Industrial Commission*, 116 Ariz. 213 (App.), 568 P.2d 1111 (1977). Leaving the State of Arizona while a request for permission to do so is being administratively processed is not synonymous with leaving the State of Arizona with the agreement of the insurance carrier and written approval of

The Industrial Commission. While the evidence establishes that the applicant left the State of Arizona for compelling financial reasons, it also establishes that the applicant's departure was without the agreement of the insurance carrier or employer and the written approval of the Commission. Because of compelling financial reasons, the applicant should be and is by this decision granted permission to reside in Colorado. However, because the applicant's absence from the State has been unlawful and without approval, his right to compensation benefits, as well as his right to reimbursement for medical expenses, is forfeited to the date of this Award (that being the first time that the applicant has been absent from the State with permission). See *Continental Casualty Co. v. Industrial Commission, supra.*

This award was affirmed on administrative review, and this special action—Industrial Commission followed presenting the question concerning the effective date that benefits should be reinstated with claimant contending that the effective date should be the date he requested permission from the Industrial Commission to leave. The employer and carrier contend that the effective date should be the date the award was issued. We interject as a third possible effective date the date upon which the Industrial Commission first acted upon claimant's request. We first examine what we consider is the controlling statute.

A.R.S. § 23–1071(A) provides:

> No employee may leave the state of Arizona for a period exceeding two weeks while the necessity of having medical treatment continues, without the written approval of the commission. Any employee leaving the state of Arizona for a period exceeding two weeks without such approval will forfeit his right to compensation during such time, as well as his right to reimbursement for his medical expenses, and any aggravation of his disability by reason of the

violation of this section, will not be compensated.[1]

The administrative law judge accurately observed that A.R.S. § 23–1071(A) has been consistently applied as written. Our supreme court has described it as "plain language" not requiring "construction or interpretation." *Continental Casualty Co. v. Industrial Commission*, 113 Ariz. 116, 118, 547 P.2d 470, 472 (1976). Accordingly, no exceptions to the requirement of written Industrial Commission approval have been recognized. Approval from the treating physician alone is insufficient. *Frantz v. Industrial Commission*, 21 Ariz.App. 73, 515 P.2d 898 (1973); *Hesser v. Industrial Commission*, 21 Ariz. App. 498, 520 P.2d 1175 (1974). Forfeiture applies even though the claim had not yet been accepted for benefits when the claimant left Arizona. *Waxler v. Industrial Commission*, 116 Ariz. 213, 568 P.2d 1111 (App.1977). It applies even if the claimant subsequently applies for and receives approval to leave Arizona. *Continental Casualty Co. v. Industrial Commission*, 113 Ariz. 116, 547 P.2d 470 (1976).

The claimant argues that he complied with § A.R.S. 23–1071(A) by applying for approval before leaving Arizona. Although it is clear that claimant sought approval to leave the state prior to leaving, it is equally clear that written approval from the Industrial Commission had not been obtained at the time claimant left. The statute states that written Industrial Commission approval is required to leave Arizona. As the administrative law judge correctly observed, an application for approval is not the same as written approval.

Although *Continental Casualty Co.* is distinguishable because the claimant there applied for approval after leaving Arizona, dictum from that case supports our interpretation of the statute as requiring written approval before leaving Arizona. The supreme court observed that the claimant

> could have immediately applied for permission to leave the state when he first was made aware that he was to be imprisoned outside of Arizona. Then when he received the written approval of the Industrial Commission, as he eventually did, there would have been *little or no forfeiture of compensation.* (emphasis added).

116 Ariz. at 118, 547 P.2d at 472. The supreme court has acknowledged that forfeiture may result if the claimant leaves Arizona while the application for approval is administratively processed. Based upon our interpretation of the controlling statute and accompanying case law we conclude that the administrative law judge was correct in determining that the effective date for reinstatement of benefits was the date the award was issued.

Although precedent fully supports this interpretation of A.R.S. § 23–1071(A), we fully recognize that the statutorily mandated result is harsh. This case illustrates that the need to leave Arizona may well be exigent and a matter of economic necessity. Claimant's reason, as established at the

1. A.C.R.R. R4–13–115, the Industrial Commission rule implementing A.R.S. § 23–1071(A), provides:

A. If an employee is claiming benefits under the Arizona Workmen's Compensation Law, he will neither be permitted nor directed to leave the State or locality in which he is receiving medical, surgical or hospital treatment except under compelling circumstances or by agreement of the applicant and the carrier, and then only with the written permission of the Commission or its authorized representative. If there is no agreement but compelling circumstances exist, application for permission to leave must be made to the Commission and the written authorization of the Commission or its authorized representative must be obtained. This rule shall apply to foreign countries, but shall not apply in those instances involving State borders where the logical or nearest medical facility is situated across the State border or adjacent thereto.

B. Failure to receive written authorization of the Commission, if required, will result in forfeiture of the workman's right to compensation during such time as he is out of the State as well as his right to reimbursement for medical expenses.

C. Any aggravation of an employee's disability by reason of his violation of this rule will not be compensated.

hearing, for wanting to leave Arizona to go to Colorado was compelling. He testified that he simply "could not make it here on what industrial [was] paying." He was receiving approximately $124.00 in compensation benefits every two weeks, he was unemployed and his wife was employed on a part-time basis. Claimant's in-laws offered to assist him and his family by having them live with them in Colorado. After leaving Arizona claimant and his family did live with them and at the time of hearing they were residing in a home owned by claimants' in-laws. This case further illustrates that the assumption that applications for approval will be speedily and correctly processed is overly sanguine. Realistically, and as pointed out in oral argument, months and even years of delay are possible if an administrative hearing and appeals to this court and to the supreme court are necessary. This simply should not be. In addition, we cannot close our eyes to the fact that the basis for the initial denial by the Industrial Commission was in error.

The remedy for correcting this undue harshness, however, rests with the legislature. *Cf. Hesser v. Industrial Commission,* 21 Ariz.App. 498, 500, 520 P.2d 1175 (1974) ("We would add, however, that this case points out the need of further legislation in this area as it appears that the petitioner was dealt with unjustly.") Surely a more equitable rule could be fashioned that protects the employer's and carrier's legitimate interests in ensuring adequate medical treatment for the claimant and in controlling compensation payments until written approval is given, yet relieves the claimant from the delays of the approval process and a forfeiture of benefits which he would otherwise be entitled to receive. This is a matter well deserving of legislative consideration.

For the foregoing reasons, the award is affirmed.

Award affirmed.

FROEB and OGG, JJ., concur.